UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------------x

KATHRYN B. DUVALL,                                  :
                                                    :
                          Plaintiff,                :     **COMPLAINT**
                                                    :
              v.                                    :     Case No.: 1:13-cv-00525
                                                    :
KENYON & KENYON LLP, MARCIA H. SUNDEEN,             :     **JURY TRIAL DEMANDED**
JOHN W. BATEMAN, T. CY WALKER and AIMEE N.          :
SOUCIE,                                             :
                                                    :
                          Defendants.               :
------------------------------------------------------------------------x

     Plaintiff Kathryn B. Duvall, by her attorneys, Pohl LLP and the Law Office of Sara Kropf

PLLC, as and for her Complaint against Defendants Kenyon & Kenyon LLP ("Kenyon &

Kenyon"), Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie, alleges as

follows:

<u>**NATURE OF THIS PROCEEDING**</u>

     1.    This is an action under the Copyright Act brought by the beneficial owner of

certain copyrighted material against a law firm and four partners in that firm who have brazenly

claimed to be the sole authors of material that, as demonstrated below, is not theirs.

     2.    Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy

Walker and Aimee N. Soucie have claimed to be sole authors of copyrighted material of which

the heir of the late Judge Donald Knox Duvall, his wife, Mrs. Duvall, is beneficial copyright

owner under the Copyright Act.  In so doing, Defendants have also violated other of Plaintiff's

rights, including contractual rights.

     3.    The copyrighted material at issue is a legal treatise entitled *Unfair Competition*

*and the ITC: Actions Before the International Trade Commission under Section 337 of the Tariff*

*Act of 1930* (the "Work").  Judge Duvall is the indisputable sole author of the early editions of the Work, including a 1997 edition featured in this Complaint (the "1997 Edition").

4.     In fact, the "Foreword" section of the 1997 Edition, written by The Honorable Edward D. Re, then the Chief Judge of the United States Court of International Trade, states that:

> The author, Donald K. Duvall, is uniquely qualified to write this practical Handbook on Section 337 practice before the International Trade Commission.   As the former Chief Administrative Law Judge of the ITC, he writes with authority about the cases he adjudicated during his service with the Commission.   Written with firmness of conviction and a full knowledge of the subject, the Handbook makes available to the reader a forthright, case-oriented discussion of the duty of candor and the right to counsel, together with a detailed analysis of the pre-hearing and hearing process within strict statutory time limits.

1997 Edition, Foreword, p. vii-viii.

5.     After Judge Duvall's death in 1999, updated versions of the Work have been released.   These updated versions have all built on Judge Duvall's "de facto treatise" (as Defendants call it), featuring edits and supplements to the original material as necessary to keep apace with developments in the law over the years since Judge Duvall's death.

6.     Until recently, these editions – including the 2011 edition ("2011 Edition") – have acknowledged Judge Duvall's original authorship of the Work.   Indeed, the 2011 Edition states on the cover that it "[i]ncludes original text by Donald K. Duvall," while also listing Defendants as authors.   In fact, the 2011 Edition is substantially similar to the 1997 Edition.

7.     Something changed in 2012.   Even though the 2012 edition is substantially similar to the 1997 Edition (and largely the same as the 2011 Edition), Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie claim to be the sole authors of the 2012 edition of the Work (the "2012 Edition").   Judge Duvall is not given any authorship accreditation at all.

2

8.      Defendants' claim to sole authorship of the 2012 Edition is false.

9.      To demonstrate the extent to which the 2012 Edition (of which Defendants claim to be sole authors) is substantially similar to the 1997 Edition (of which Judge Duvall is indisputably sole author), this Complaint compares several specific sections of the 2012 Edition with their counterparts in the 1997 Edition.

10.     As demonstrated below, in the 2012 Edition, Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie have, in many sections, simply copied – <u>verbatim</u> – sections that Judge Duvall drafted and which are found in the 1997 Edition.  Elsewhere, Defendants make only the most minor and insignificant changes to Judge Duvall's work, yet thereby claim authorship of the whole.  For example, in one section of over 900 words, Defendants have made a single edit – they changed "In a nutshell" to "Briefly." *See below*, ¶ 73.   According to them, <u>they have now authored the whole 900-word section</u>.

11.     Even where the extent of Defendants' edits is greater, they incredibly still claim for themselves the most idiosyncratic elements of Judge Duvall's writing.  For example, in the 2012 Edition, Defendants begin the section "General – Permanent and Temporary Relief" with:

> The hearing on the merits in a section 337 investigation is like a musical crescendo.  It is usually the climax of the case, which has been steadily increasing in evidential volume.

*See* 2012 Edition, § 5:1 (p. 306).   Judge Duvall commenced this same section with <u>the exact same two sentences verbatim</u>.  *See* 1997 Edition, Ch. 5, § 5:1[1] (p. 341).   (This section appears in the 1997 Edition and the 2012 Edition in the same subsection ("Elements and Importance") and Chapter ("Hearing").)

12.     Then, while in that same section Judge Duvall wrote, "depending on the completeness and effectiveness of the evidentiary record, the losing party in temporary relief has

a more difficult evidentiary row to hoe," Defendants now claim sole authorship of this <u>entire line</u> on account of their inserting the words (i) "a" before "temporary" and (ii) "proceeding" after "relief."  *Compare* 1997 Edition, Ch. 5 ("Hearing"), § 5.1[1] (p. 341) *with* 2012 Edition, Ch. 5 ("Hearing"), § 5:1 n. 2 (p. 306).

13.     This Complaint provides eleven more examples of sections in the 2012 Edition that are substantially similar or nearly identical to their predecessor sections in the 1997 Edition. *See below*, pages 14 – 39 (¶¶ 71 – 119).  Of course, these comparisons are just the beginning. There are at least hundreds more examples in the approximately 900-page volume.

14.     Indeed, the 2012 Edition and the 1997 Edition are substantially similar to an astounding degree and, in fact, wholly identical in numerous sections.

15.     Nevertheless, Kenyon & Kenyon has recently disingenuously claimed that it is entitled, under certain agreements described below, to cease providing any benefits to Plaintiff because, according to Kenyon & Kenyon:

> [T]here is virtually nothing left of the original work, as over the years since Kenyon & Kenyon took over complete charge of the Book, it has been rewritten any number of times.

16.     This statement is a willful and calculated falsehood.

17.     Indeed, the claim made by Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie of sole authorship of the 2012 Edition is brazenly and demonstrably false.   This claim and Defendants' related conduct have violated Plaintiff's rights with respect to the Work, including the 1997 Edition.  These rights include not only her rights arising from her status as beneficial owner under the Copyright Act, but also valuable rights to past and future royalties.

## PARTIES

18.     Plaintiff Kathryn B. Duvall lives in Maryland.   She is the widow of the late Judge Donald Knox Duvall as well as his heir.  She is also the executor of his estate.

19.     Judge Duvall had a highly distinguished legal career, including seven years as Chief Administrative Law Judge of the United States International Trade Commission.  He is the original, sole author of the legal treatise at issue in this action, *Unfair Competition and the ITC: Actions Before the International Trade Commission under Section 337 of the Tariff Act of 1930.*

20.     Defendant Kenyon & Kenyon is a law firm with a principal office located at 1500 K Street, NW, Washington, D.C. 20005-1257.  At its website, Kenyon & Kenyon describes itself as "an intellectual property law firm" that "is regarded as a firm of choice in various IP areas by reputable legal referral guides." *See* http://www.kenyon.com/About (last visited: 4/6/13).

21.     Defendant Marcia H. Sundeen is an attorney and partner in Kenyon & Kenyon's D.C. office.  At Kenyon & Kenyon's website, Ms. Sundeen is held out as  "a co-author and editor of the de facto treatise on Section 337, Unfair Competition and the ITC." *See* http://www.kenyon.com/Our-People/S/SundeenMarcia.aspx (last visited: 4/6/13).

22.     Defendant John W. Bateman is an attorney and partner in Kenyon & Kenyon's D.C. office.  At Kenyon & Kenyon's website, Mr. Bateman is held out as "a co-author of *Unfair Competition and the ITC*, a handbook on section 337 practices and procedures." *See* http://www.kenyon.com/Our-People/B/BatemanJohn.aspx (last visited: 4/6/13).

23.     Defendant T. Cy Walker is an attorney and partner in Kenyon & Kenyon's D.C. office.  At Kenyon & Kenyon's website, Mr. Walker is held out as "a co-author of the 'go-to' treatise on ITC case management, *Unfair Competition and the ITC: A Treatise on Section 337 Actions.*" *See* http://www.kenyon.com/Our-People/W/WalkerTCy.aspx (last visited: 4/6/13).

24.     Defendant Aimee N. Soucie is an attorney and counsel in Kenyon & Kenyon's D.C. office.  At Kenyon & Kenyon's website, Ms. Soucie is held out as "a co-author and editor of the de facto treatise on Section 337, *Unfair Competition and the ITC*."  *See* http://www.kenyon.com/Our-People/S/SoucieAimee.aspx (last visited: 4/6/13).

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367, including supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Upon information and belief, the Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000 taking into consideration past damages and future, non-speculative damages. The Court may enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

26.     This Court has personal jurisdiction over Kenyon & Kenyon under (i) D.C. Code § 13-422 because Kenyon & Kenyon has a principal place of business in the District of Columbia and (ii) D.C. Code § 13-423 because it regularly and systematically transacts business in D.C. and the claims for relief asserted herein arise from acts underlying those transactions.

27.     This Court has personal jurisdiction over Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie under (i) D.C. Code § 13-422 because they each have their principal place of business in the District of Columbia and (ii) D.C. Code § 13-423 because they regularly and systematically transact business in the District of Columbia and the claims for relief asserted herein arise from underlying those transactions.

28.     Venue is proper in the District Court for the District of Columbia, including under 28 U.S.C. § 1391(b), because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

### The Infringed Work

29.     Judge Duvall is the original, sole author of the Work (defined above as the legal treatise entitled *Unfair Competition and the ITC: Actions Before the International Trade Commission under Section 337 of the Tariff Act of 1930*).

30.     The Work was first published, upon information and belief, in 1990.

31.     Several editions of the Work have been published since its first edition, including the 1997 Edition, which states clearly on its cover and within that Judge Duvall is its sole author.

32.     Judge Duvall passed away in 1999.

33.     Judge Duvall was highly respected as a jurist and public servant.  In the "Tribute to Donald K. Duvall" found at the beginning of the 2011 Edition of the Work, the Honorable Paul Luckern, then Chief Judge of the United States International Trade Commission, states that:

> Judge Duvall was one of those too few lawyers with whom I was privileged to work, whose dedication to public service, personal integrity and adherence to principle not only earned my admiration and respect but added to my own pleasure and pride in serving with him as a public servant.

34.     Records provided by the United States Copyright Office indicate that, since Judge Duvall's death in 1999, an edition of the Work has been released each year (except for 2002). With respect to each such edition up until and including the 2011 Edition, Judge Duvall is acknowledged as either sole author or an author.  (Upon information and belief, several or all of the individual Defendants are listed as authors on the 2009, 2010 and 2011 editions, in addition to Judge Duvall.)

35.     The 2011 Edition's cover states: "Includes original text by Donald K. Duvall."

36.     The 2012 Edition, like the 2011 Edition, contains a vast amount of text of which Judge Duvall is the original author, and which appears in the 1997 Edition, of which Judge Duvall is indisputably sole author.

37.     Nevertheless, Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie claim to be the sole authors of the 2012 Edition, providing no authorship accreditation to Judge Duvall whatsoever.

38.     In so doing, Defendants have wrongfully sought to profit from – as Chief Judge Re of the United States Court of International Trade described it – Judge Duvall's "uniqu[e] qualifi[cations]," his "authority" regarding "the cases he adjudicated during his service with the Commission," his "firmness of conviction" and "full knowledge of the subject" and the "forthright, case-oriented discussion[s]" Judge Duvall "ma[de] available to the reader."

39.     Defendants' claim of sole authorship of the 2012 Edition also infringes, upon information and belief, Plaintiff's rights with respect to other editions of the Work of which Judge Duvall is author, including but not limited to rights arising from beneficial owner status under the Copyright Act.  Plaintiff intends to amend this Complaint to assert all claims premised on those violations, to whatever extent not deemed pleaded here, if necessary.

40.     Exhibit A hereto is a public record generated by the website for the United States Copyright Office.  As this document demonstrates, copyright registration has been effected for numerous editions of the Work released in and between the years 1992 and 2011, including the 1997 Edition.   Upon information and belief, copyright registration of the 2012 Edition has been completed as well or is being processed.

**The 1989 Agreement**

41.     On May 26, 1989, Judge Duvall entered a publishing agreement with Clark Boardman Company, Ltd. concerning the Work (the "1989 Agreement").

42.     In the 1989 Agreement, Judge Duvall, as author of the Work, agreed to part with legal title to the copyright of the Work in exchange for a percentage of royalties based on sales.

43.     In particular, in the 1989 Agreement, he assigned exclusively to Clark Boardman, Ltd. "all rights in the Work, including copyright" (subject to certain limitations), 1989 Agreement, § 4, in exchange for "fifteen percent (15%) of the net proceeds to it from publication, sale or use of the Work," *id.*, § 9.

44.     The 1989 Agreement provides that "If [a] revision, supplement or new edition is prepared by a person other than [Judge Duvall], the Publisher may in its discretion identify that person on both the new material and in any related advertising, and give him authorship credit, together with the Author, displayed with no greater prominence. *Id.*, § 8 (emphasis added).

45.     The 1989 Agreement is "binding upon, and inure[s] to the benefit of, not only the parties, but also their heirs, legal representatives, successors and assigns." *Id.*, § 18.

46.     Upon information and belief, at or around the time of the 1989 Agreement, Judge Duvall was an attorney affiliated with Kenyon & Kenyon, either as *of counsel* or otherwise.

47.     Upon information and belief, at some later time, Thomson Reuters acquired Clark Boardman, Ltd. and thereby became party to, and succeeded to Clark Boardman, Ltd.'s interest under, the 1989 Agreement.

**The 1997 Agreement**

48.     On July 21, 1997, Judge Duvall entered an agreement with Kenyon & Kenyon concerning the Work (the "1997 Agreement").

49.     The 1997 Agreement secured for Kenyon & Kenyon certain editorial rights.

50.     In the 1997 Agreement, Judge Duvall and Kenyon & Kenyon agreed that:

> Any royalties from the volume will continue to be paid to Donald
> K. Duvall or his Estate for the next two (2) years.  Thereafter, one-
> third (1/3) of all such royalties will be paid to Donald K. Duvall or
> his Estate so long as his name appears on the volume.

1997 Agreement, ¶ 6.

51.     Upon information and belief, the "royalties from the volume" referenced in the 1997 Agreement were those royalties contemplated in 1989 Agreement.

52.     Indeed, over the years since her husband's death, and as recently as December 2011, Defendant Kenyon & Kenyon and the publisher (whether Clark Boardman, Ltd. or Thomson Reuters), in concert with each other, have effected payments to Plaintiff which purportedly represented royalties due under the terms of the contractual agreements, including the 1997 Agreement.

53.     In fact, Plaintiff has received royalty payments until recently.  As Kenyon & Kenyon stated to Plaintiff's counsel by letter dated Sept. 6, 2012:

> From 1997 until 2012, Judge Duvall's name has appeared on the
> cover of the Book as an original contributor and, therefore, one-
> third of the royalties from sale of copies of the Book were paid to
> Judge Duvall's estate.

54.     Indeed, shortly after December 2011, Ms. Duvall received a "Royalty Statement" along with a check for $17,423.45, which purported to be royalties in connection with the time period "July 2011 – December 2011" from the sale of 424 copies of the Work.

**Kenyon & Kenyon, in Concert with the Publisher, Causes Plaintiff to no Longer Receive Royalties By Representing Falsely that Judge Duvall is No Longer an Author**

55.     Kenyon & Kenyon and the publisher have recently – in concert with each other – taken the position that Plaintiff (as Judge Duvall's heir) is no longer entitled to any royalties

under the applicable agreements because, according to Kenyon & Kenyon, Judge Duvall is no longer an author of the Work.

56.     In a letter to Plaintiff dated June 15, 2012, Kenyon & Kenyon stated that it is no longer required to share any royalties with Plaintiff under § 6 of the 1997 Agreement because, in Kenyon & Kenyon's words, **"there is virtually nothing left of the original work, as over the years since Kenyon & Kenyon took over complete charge of the Book, it has been rewritten any number of times."** (emphasis added)

57.     Then, in a December 18, 2012 letter to Plaintiff, the publisher stated that:

> [A]fter careful determination as to source of the [W]ork's content, the substantial revision of that content by the current authors, and the many years since Judge Duvall had contributed material to the publication, we were forced to conclude that attributing the work to Judge Duvall no longer provided readers with an accurate statement of authorship.

58.     As demonstrated below, Kenyon & Kenyon's claim that "there is virtually nothing left of the original work" is frivolous.   So too is the publisher's statement that "attributing the work to Judge Duvall no longer provided readers with an accurate statement of authorship."

59.     By letter dated Sept. 6, 2012 to Plaintiff's counsel, Kenyon & Kenyon stated:

> [T]he Firm and the publisher have decided that Judge Duvall's name will be wholly removed from the cover of the Book, starting with the next publication of the Book later this year.   Therefore, pursuant to existing agreements, all royalty payments to Judge Duvall's estate are to cease and the publisher will no longer be sending any royalty payments to the estate.

60.     Upon information and belief, Kenyon & Kenyon and the publisher have acted in concert pursuant to a wrongful scheme to remove Mrs. Duvall from the equation, i.e., to

eliminate her entitlement to a share of future royalties from sales of the Work, thereby resulting in greater profits to Kenyon & Kenyon and the publisher.

61.     In fact, Kenyon & Kenyon admitted as much to Plaintiff's counsel when, by letter dated September 6, 2012, it stated that the firm:

> plans to enter into a new contract directly with the publisher, which shall supersede and replace any prior agreements between or among the publisher, the Firm and Judge Duvall, his heirs, successors or assigns.

62.     Upon information and belief, this "new contract direct with [each other]" will be far more lucrative to Kenyon & Kenyon than the current contracts involving Mrs. Duvall because, upon information and belief, Kenyon & Kenyon and the publisher intend to begin offering the book in electronic format, a source of sales that will generate substantial revenue and thus substantial royalties.

63.     In an effort to eliminate Plaintiff's right to share in these royalties and to maximize its profits, Kenyon & Kenyon has taken the frivolous position that Judge Duvall is no longer an author of the Work.

64.     And then, in an effort to deceive Plaintiff into willingly foregoing her right (and her children's right) to this valuable stream of future income for which her late husband bargained in 1997, Kenyon & Kenyon offered her a "gift" if she would acquiesce to their plan to remove her from the equation.

65.     Indeed, as a "gift," Kenyon & Kenyon offered to provide Mrs. Duvall, "for the remainder of her life, a like portion (one third) of the royalties [Kenyon & Kenyon] may receive in the future from sale of copies of the Book in hard cover or trade paperback."  Sept. 6, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

66.     Of course, this "gift," if accepted, would have provided a benefit wholly inferior to the benefits to which Plaintiff and any other of Judge Duvall's heirs are currently entitled under the contractual agreements.  Indeed, the "gift" would provide benefits only to Mrs. Duvall "for the remainder of her life," while the contractual agreements provide that royalties shall be paid to all of Judge Duvall's heirs, including ultimately his two daughters.  Moreover, the "gift" is limited to royalties derived from "sale of copies of the Book in hard cover or trade paperback," while Mrs. Duvall's current rights entitle her to royalties derived from all sales (including sales of electronic copies).

67.     Of course, Kenyon & Kenyon's "gift" to Plaintiff was designed to eliminate an impediment to Kenyon & Kenyon's goal of wrongfully maximizing its profits derived from sales of the Work, including by removing its obligation to share royalties with Plaintiff, her two daughters or any other of Judge Duvall's heirs, as per Kenyon & Kenyon's prior agreement.

68.     Indeed, in exchange for this "gift," Kenyon & Kenyon demanded that Mrs. Duvall and her two daughters:

> relinquish . . .  any interest in or to the Book, revenues from the Book (other than the 1/3 distribution from royalties from sale of hard cover or trade paperback copies of the Book provided for herein), or claim to ownership of or control over the Book, its content, publishing, advertising or promotion.

Sept. 6, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

69.     Plaintiff rejected Kenyon & Kenyon's offered gift.

70.     Kenyon & Kenyon has no right to "enter into a new contract directly with the publisher, which shall supersede and replace any prior agreements between or among the publisher, the Firm and Judge Duvall, his heirs, successors or assigns," as it has claimed.

**The 2012 Edition is Substantially Similar and, in Many Sections, Identical to the 1997 Edition**

71.     The paragraphs below demonstrate that the 2012 Edition of the Work, of which Defendants Kenyon & Kenyon, Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie claim to be sole authors, is substantially similar to and, in many sections, identical to the 1997 Edition, of which Judge Duvall is indisputably sole author.

72.     To accomplish this comparison of the 2012 Edition with the 1997 Edition, this Complaint provides several "redline" comparisons.   In these redlined comparisons, specific sections of the 2012 Edition are redlined against the original text from the 1997 Edition showing exactly what changes Defendants – in the 2012 Edition – made to the 1997 Edition.   Defendants' changes are shown in red font (or light gray font in a non-color printout) and in text that is either (i) crossed through, which shows Judge Duvall's text that Defendants deleted, or (ii) underlined, which shows text that Defendants have added in addition to Judge Duvall's work.

73.     **"Definitions and Sources."**   Both the 1997 Edition and the 2012 Edition contain a section entitled "Definitions and Sources."[1]   The following two-page redline comparison demonstrates that, <u>with the exception of changing the words "In a nutshell" to "Briefly,"</u> Defendants made only a few minor edits to citation formats but otherwise left the 2012 Edition identical to Judge Duvall's 1997 text (containing over 900 words):

---

[1]     In the 1997 Edition, this section is located within the subsection entitled "Jurisdiction." *See* 1997 Edition, § 3.2[[1]) (page 63).   In the 2012 Edition, this section is also located within the subsection entitled "Jurisdiction."   *See* 2012 Edition, § 2:19 (page 34).

In an investigation under section 337, the ITC is required to determine the issues in dispute and the real parties in interest, and to provide pre-hearing notice, discovery, and opportunity for a due process hearing, a final determination based on an evidentiary record, and a determination of an enforceable remedy in the public interest.  It follows that the jurisdiction of the ITC must be sufficient to authorize and empower it not only to hear and decide particular matters within the purview of the statute, but to provide a determination or judgment that completely and finally disposes of the matter by settlement or by a final determination that provides effective relief or remedy when the complainant prevails.  Since the parties in a section 337 investigation normally include persons and/or property not present within the territorial limits of the United States, the ITC's jurisdiction must also be effective with respect to foreign parties or property outside the United States in order for the statute to fulfill the statutory intent of Congress.

Since section 337 is administered by an administrative agency exercising quasi-judicial functions, it is not surprising that the jurisdictional law applied by the ITC and by the reviewing court (the Federal Circuit) has been strongly influenced by traditional common law concepts of jurisdiction.  Such established concepts as *in personam* jurisdiction[1] and *in rem* jurisdiction[2], developed in the courts of common law over centuries of experience in evolving more practical and effective adjudication, have been invoked to justify or explain the basis of ITC jurisdiction under section 337.

~~In a nutshell~~ Briefly, at least four different types of jurisdiction have been asserted in the decisions of the ITC and its reviewing court to explain the jurisdictional basis of the ITC's authority to investigate and adjudicate cases under section 337:

(1)  subject matter jurisdiction, required in every section 337 action, which is established by a verified allegation in the complaint of an unfair act or method of competition respecting a product or process imported or sold in the United States within the meaning of section 337;

(2)  *in rem* jurisdiction, which is commonly asserted as being required for ITC issuance of an exclusion order to enforce an affirmative determination of violation of section 337, and established by verified allegation in the complaint of infringing or

---

[1]   In personam jurisdiction is based on a court's authority over the defendant's person, and permits imposition of a personal obligation on the defendant in favor of the plaintiff.  Shaffer v. Heitner, 433 U.S. 186, 200, 97 S. Ct. 2569, ~~2577~~53 L. Ed. 2d 683 (1977).

[2]   In rem jurisdiction is based on the court's power over property within its territory, and the judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before ~~a~~the court.  Shaffer v. Heitner, 433 U.S. ~~at~~186, 200 ~~.~~, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

injurious products or processes that, actually or constructively have been or imminently will be imported or sold in the United States;

(3)   *in personam* jurisdiction, which depending on the circumstances, may be required for ITC issuance of a cease and desist order to enforce a violation determination under section 337, and which is established by personal appearance (in person or by counsel) and/or by personal service of the complaint and notice of investigation on all parties named in the section 337 investigation; and

(4)   due process notice jurisdiction, required for ITC issuance of any order under section 337, and established by showing subject matter jurisdiction and adequate notice and opportunity for hearing as prescribed by the Administrative Procedure Act, and the ITC Rules of Practice and Procedure, based solely on Congress's delegation of legislative authority to the ITC pursuant to its commerce power under the U.S. Constitution, Article 1, section 8.

Although legal authorities and commentators may not entirely agree on the nature, extent and consequences of these types of jurisdiction that the courts and the ITC have invoked, often in combination, as necessary or proper in section 337 investigations, they provide a suitable means for examining the present state of the law as reflected in the decisions of the ITC and the reviewing courts concerning the jurisdictional aspects of section 337.

In general, it is well-settled that when a court or agency has both subject matter jurisdiction and jurisdiction over parties (in personam) or property (in rem), it has the power to decide and fully adjudicate a particular case.[3]

In making this examination, it is useful to think of jurisdiction in terms of its dual functions of competence and remedy relief.  This is especially so in international law, which governs the relations between sovereign states and between the citizens of different sovereign states.  In international law, the capacity of a state to make a rule of law, e.g., enactment of the Federal Rules of Civil Procedure, is known as prescriptive jurisdiction.[4]  Enforcement jurisdiction, on the other hand, refers to the capacity of a state under international law to enforce a rule of law.  For example, when a court enters an order compelling production of documents under Rule 37 of the Fed. R. Civ. P., it exercises its enforcement jurisdiction.[5]

---

[3]   See Steel Rod Treating Apparatus ~~and Components Thereof, ITC,~~ USITC Inv. No. 337-TA-97, USITC Pub. No. 1210, 215 U.S.P.Q. 229, 231 (1981) [hereinafter Steel Rod].

[4]   In re Uranium Antitrust Litigation ~~Westinghouse Electric Corporation v. Rio Algom Limited, et. al.,~~ 480 F. Supp. 1138, 1139, 1980-1 Trade Cas. (CCH) ¶ 63124, 29 Fed. R. Serv. 2d 414 (N.D. Ill. 1979).

[5]   In re Uranium Antitrust Litigation, 480 F. Supp. ~~at 11441138, 1139, 1980-1 Trade Cas. (CCH) ¶ 63124, 29 Fed. R. Serv. 2d 414 (N.D. Ill. 1979)~~ (citing Restatement (Second) of Foreign Relations Law of the United States § 6 (1965) and Onkelinx, "Conflict of International Jurisdiction: Ordering the Production of Documents in Violation of the Law of the Situs", 64 Nw. U. L. Rev. 487, 495 (1969)).

74.     Notwithstanding that, with the exception of Defendants' change from "In a nutshell" to "Briefly," the text of the "Definitions and Sources" section in the 2012 Edition is <u>identical</u> to that same section in Judge Duvall's 1997 Edition (containing over 900 words), Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Definitions and Sources" section.   *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

75.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Definitions and Sources" section in the 2012 Edition, § 2:19, is wholly without merit.

76.     For all intents and purposes, Judge Duvall is the sole author of this section given that Defendants' only contribution to this section of over 900 words is the substitution of "Briefly" for "In a nutshell" and a few minor citation edits.

77.     At a minimum, Judge Duvall is an author of the "Definitions and Sources" section in the 2012 Edition and it is substantially similar to this section in the 1997 Edition.

78.     **"Overview / Introduction."**   The 1997 Edition contains a section entitled "Overview / Introduction" which, in the 2012 Edition, is renamed "Generally" and placed within a subsection entitled "Overview / Introduction."[2]   As the following two-page redline comparison demonstrates, Defendants made a few changes to Judge Duvall's section in the 1997 Edition, including changing "Marrakech" to "Morocco," but otherwise left it the same:

---

[2]     In the 1997 Edition, this section is located within the chapter entitled "Compliance with GATT / WTO."   *See* 1997 Edition, § 11.1 (page 526).   In the 2012 Edition, this section is located within the section "Overview / Introduction" within the chapter entitled "Compliance with GATT / WTO."   *See* 2012 Edition, § 11:1 (page 489).

The General Agreement on Tariffs and Trade (GATT)[1] is the principal world-wide international trade agreement binding on over 100 countries, including the United States.  GATT has become relevant to section 337 because the series of multilateral trade negotiations, known as the GATT Uruguay Round, included ~~for the first time~~ negotiations relating to the trade-related aspects of intellectual property (TRIPs).  The final Act embodying the results of the Uruguay Round Trade Agreement,[2] including TRIPs, was signed by over 100 countries ~~at Marrakech,~~in Morocco, on April 15, 1994, and entered ~~ui~~into force for the United States on January 1, 1995.[3]  ~~Another o~~One of the 19 international agreements comprising the Uruguay Round Agreements is the WTO Agreement which establishe~~sd~~ a World Trade Organization ~~which over a one-year transition period~~that replaced GATT as the institutional mechanism for administering and monitoring the Agreements, including the Understanding on Rules and Procedures Governing the Settlement of Disputes.  In addition to providing international norms and standards for the protection and enforcement of intellectual property rights, TRIPs prescribes border measures comparable to section 337 to protect holders of national intellectual property rights from foreign imports infringing those rights.[4]  ~~Since, as~~As a general rule, domestic laws must comply with the international obligations of an applicable (binding) international law or agreement ~~such as GATT, national laws, like (~~section 337, must comply ~~–~~ or not be inconsistent ~~–~~ with the TRIPs provisions of the ~~final~~ Uruguay Round Agreement~~)~~.

~~Quite A~~apart from the Uruguay Round, since 1989 the United States, as a member of GATT, has been under the international obligation to conform section 337 to the national treatment requirements of the GATT by eliminating certain

---

[1]  61 Stat. Parts 5 & 6, TIAS No. 1700 (1948).

[2]  H. Doc, 103-316, 103d Cong., 2d Sess., September 27, 1994 (Vols. 1 & 2).

[3]  Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat. 4809 (1994); Presidential Memorandum for the U.S. Trade Representative (USTR), December 23, 1994, and Presidential Proclamation 6763 of December 23, 1994; 60 Fed. Reg. 1003 and 1007, January 4, 1994.

[4]  Agreement on Trade-Related Aspects of Intellectual Property Rights, Including Trade In Counterfeit Goods, MTN/FA II-AIC, Part III; Enforcement of Intellectual Property Rights, Section 4: Special Requirements Related To Border Measures, published in Inside U.S. Trade, Special Report, December 16, 1993~~; the TRIPs text is reprinted at Appendix Z.~~.

inconsistencies in the statute as found by a GATT Panel Report.[5]  U.S. ~~L~~Legislation to modify section 337 in response to the GATT Panel Report was included in the implementing legislation for the GATT Uruguay Round Agreements, approved by the Congress under the fast track procedure and signed by President Clinton on December 8, 1994.[6]

One of the most important objectives of the Uruguay Round, upon the recommendation of the President's Advisory Committee on Trade Negotiations, was to negotiate a binding agreement or code in the GATT on intellectual property similar to the codes negotiated in the earlier Tokyo Round.  Such a GATT code would supplement existing international conventions, including those administered by the World Intellectual Property Organization (WIPO), by developing better international norms or standards and improved means of enforcement and dispute settlement.[7]  As described in more detail below, one essential element of such a code is a provision for effective border controls in each country to protect intellectual property rights.[8]  Section 337 has relevance to this essential objective, since for over 50 years it has operated as an effective border control for the United States in the protection of trade-related intellectual property rights, and, therefore, constitutes a workable model or example that other countries, seeking improved protection, may wish to consider if not emulate.  At the same time, however, as described below, a 1989 GATT Panel Report found section 337 to be inconsistent with the national treatment provisions of Articles III and XX(d) of the GATT.

---

[5]    For fuller discussion of the GATT Panel Report and the proposed U.S. response to it, see ~~Chapter~~§§ 11~~.2 & 3, infra.~~:7 to 11:9 & 11:10 to 11:11.

[6]    Section 321, Uruguay Round Agreements Act, Pub. L. 103-465 (H.R. 5110), 103d Cong., 2d Sess., 108 Stat. 4809 (1994).   For the current text of ~~1994 modifications of~~ section 337, *see* Appendix A~~, infra.~~.

[7]    Id. at 436.

[8]    See Suggestion By the United States for Achieving the Negotiating Objective, submitted to GATT ~~Gg~~group of Negotiations on Goods, MTN.GNG/NGII/W/14/Rev. 1, pp. 12-13, 16-~~16~~7 (17 October 1988) (hereinafter "U.S. Suggestions").

79.     Notwithstanding that, with the exception of the above-demonstrated minor edits, the section entitled "Generally" within the subsection "Overview / Introduction" in the 2012 Edition is nearly the same as Judge Duvall's "Overview / Introduction" in the 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Overview / Introduction" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

80.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Generally" section in the 2012 Edition, § 11:1, is wholly without merit.

81.     As the above redline demonstrates, Judge Duvall is plainly an author of the "Generally" section in the 2012 Edition as it is substantially similar, and identical in large part, to his "Overview / Introduction" section in the 1997 Edition.

82.     **"Exhibits."**  Both the 1997 Edition and the 2012 Edition contain a section entitled "Exhibits."[3]  The following redline comparison demonstrates that Defendants, in the 2012 Edition, kept all 275 of Judge Duvall's words, and just added a single sentence:

---

[3]     In the 1997 Edition, this section is located within the subsection entitled "Hearing Ground Rules," within the subsection entitled "Initial Prehearing Conference," within the subsection entitled "Prehearing Conferences," within the Chapter entitled "Prehearing Conference, Discovery and Settlement."  *See* 1997 Edition, § 4.1[1][H][v] (page 221).  In the 2012 Edition, this section is also located within the subsection "Ground Rules", within the subsection "Initial Proceedings," within the Chapter entitled "Prehearing Proceedings.  *See* 2012 Edition, § 4:10 (page 197).

All exhibits should be exchanged on or before the due date ordered in the procedural schedule.  Each ALJ's ground rules will outline the procedures for exchanging lists of proposed exhibits, creation of joint exhibit lists, and electronic submission of pre-hearing exhibits.  The ALJ should receive the original and two copies of each exhibit.  Three additional copies of each exhibit, whether received in evidence or rejected, should be delivered to the ITC Secretary within ten days after conclusion of the hearing.  Documentary exhibits and physical exhibits should be marked serially in separate number series, with exhibits containing business confidential information so designated pursuant to any applicable protective order.  All exhibits or copies thereof must be clear, legible, and coordinated so as to avoid unnecessary duplication.

Exhibits should cite sources of information and methods employed in formulating accounting, economic or other types of data as appropriate.  Rebuttal exhibits, if submitted, should refer specifically to the exhibit(s) being rebutted.  The title, number, and sponsoring witness for each exhibit should be listed in the prehearing statement.  Each exhibit should have a principal title stating exactly what it contains and a statement of the purpose for which the exhibit is offered (this is not part of the evidentiary record).  The authenticity of all documents submitted in proposed exhibits is deemed admitted unless written objection is filed prior to the hearing, except that a party will be permitted to challenge such authenticity at a later time upon a clear showing of good cause for failure to have filed a written objection.  Subject to objection, non-controversial exhibits are received without a sponsoring witness if presented with (a) an affidavit that the affiant or someone under his control prepared the exhibit, and (b) a request that the exhibit be received in evidence without a witness at the hearing.

83.     Notwithstanding that, with the exception of the addition of a single sentence, this section entitled "Exhibits" in the 2012 Edition is identical to that same section in Judge Duvall's 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Exhibits" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

84.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Exhibits" section in the 2012 Edition, § 4:10, is wholly without merit.

85.     Judge Duvall is plainly an author of the "Exhibits" section in the 2012 Edition.

86. **"Stipulations."**   Both the 1997 Edition and the 2012 Edition contain a section entitled "Stipulations."[4]   As the following redline comparison demonstrates, with the exception of the change from "judge" to "ALJ," the "Stipulations" section in the 2012 Edition is identical to the Judge Duvall's "Stipulations" section in the 1997 Edition:

---

Any stipulations proposed by the parties in their respective prehearing statements or memoranda will be discussed and accepted (or rejected) by the presiding ~~judge~~ALJ as part of the record.  The preferred practice is for the parties early-on to agree on stipulations which can be jointly submitted to the presiding ~~judge~~ALJ at or before the final prehearing conference.  Since stipulations are not easily arrived at in contentious cases, the presiding ~~judge~~ALJ may have to press the parties to agree to stipulations that are obviously possible and which would alleviate the extent of evidentiary proof required at the hearing.[1]  For example, a stipulation as to the importation and sale in the U.S. of some or all of the accused products is often possible, as well as audited financial data and published annual reports.  In patent-based investigations, stipulations limiting the infringement issues to one or more independent claims of the patent(s) in suit may be possible.

---

1    *See, e.g.*, Hardware Logic Emulation Systems, ITC Inv. No. 337-TA-383, Order 12 (March 28, 1996) (ordering parties to confer on stipulations regarding, for example, non-technical issues)~~]~~.

---

87. Notwithstanding that the only difference between the 2012 Edition's "Stipulations" section and Judge Duvall's "Stipulations" section in the 1997 Edition is the replacement of "judge" with "ALJ," Kenyon & Kenyon claims that there is "virtually nothing

---

4    In the 1997 Edition, this section is located within the Chapter entitled "Prehearing Conference, Discovery and Settlement."  *See* 1997 Edition, § 4.7[5] (page 337).  In the 2012 Edition, this section is located within the section "Final Prehearing Conference," which is located within the chapter entitled "Prehearing Proceedings."  *See* 2012 Edition, § 4:63 (page 301).

left of" Judge Duvall's "Stipulations" section.   *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

88.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Stipulations" section in the 2012 Edition, § 4:63, is wholly without merit.

89.     As the above redline demonstrates, Judge Duvall is plainly an author of the "Stipulations" section in the 2012 Edition as it is nearly identical to this same section in the 1997 Edition.

90.     **"History."**     Both the 1997 Edition and the 2012 Edition contain a section entitled "History."[5]  As the following redline comparison demonstrates, while Defendants made a handful of edits to Judge Duvall's "History" section from his 1997 Edition, this section appears in the 2012 Edition in substantially similar form:

---

[5]     In the 1997 Edition, this section is located within the Chapter entitled "Definition, History and Importance."  *See* 1997 Edition, § 1.2 (page 1).  In the 2012 Edition, this section is also located within the Chapter entitled "Definition, History and Importance." *See* 2012 Edition, § 1:2 (page 1).

~~This statute~~ Section 337 has been part of the law of the United States since 1922, first as ~~s~~Section ~~316~~ 337 of the Tariff Act of 1922 ~~(42 Stat. 943),~~, and then~~,~~ (and to date) as section 337 of the Smoot-Hawley Tariff Act of 1930 (19 U.S.C~~.~~A. § 1337).  Since the statute was enacted at the onset of the Great Depression of the 1930~~'s~~s, and as part of the Act that raised U.S. tariffs to their then highest levels, it ~~is~~has often been considered to be protectionist in character, aimed at protecting the U.S. economy from competing imports.  However, ~~a fair reading of~~ section 337 ~~indicates that the statute~~ is aimed more at fair trade, making illegal only those ~~imports that cause injury to a domestic industry by competing unfairly~~acts, such as ~~by infringing an American~~ patent, trademark or copyright ~~or committing any act~~infringements, that customarily ~~is~~are or reasonably can be considered unfair competition.

Even so, few cases arose under section 337 until passage of the Trade Act of 1974,[1] which amended the statute in several respects, ~~with the effect of~~ making ~~use of the statute~~it much more attractive to domestic manufacturers seeking relief from ~~injurious~~ imports.  The most significant of these 1974 amendments required the ~~U.S.~~United States International Trade Commission ~~(ITC), the independent administrative agency charged with administration of the statute,~~ to make its final decisions in section 337 investigations within 12 months, or 18 months in more complicated cases.  Some of the other amendments that ~~effectively~~ invigorated the statute included making ~~the~~ ITC decisions final, subject only to Presidential veto for policy reasons, rather than mere recommendations to the President; broadening the remedies available under the statute to include a cease and desist order, in addition to an exclusion order; and making available all legal and equitable defenses, ~~e.g.,~~including patent invalidity and unenforceability.  Furthermore, the fact-finding and initial decision-making process was professionalized by incorporating the formal adjudication provisions of the Administrative Procedure Act,[2] requiring a trial-type hearing before a federal administrative law judge who renders a written decision, with findings of fact and conclusions of law.

---

[1]   19 U.S.C~~.~~A. § 2191.

[2]   5 U.S.C~~. § 556~~A. §§ 551 et seq.

91.     Notwithstanding that the text within the section entitled "History" section in the 2012 Edition is substantially similar to that same section in Judge Duvall's 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "History" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

92.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "History" section in the 2012 Edition, § 1:2, is wholly without merit.

93.     As the above redline demonstrates, Judge Duvall is plainly an author of the "History" section in the 2012 Edition.

94.     **"Indispensable Party / Proper Party."**   Both the 1997 Edition and the 2012 Edition contain a section entitled "Indispensable Party / Proper Party."[6]  As the following <u>five-page</u> redline comparison demonstrates, Defendants added a paragraph (paragraph two) providing commentary on a case decided in 2012 (thirteen years after Judge Duvall's death), but otherwise made only a few minor and superficial edits to Judge Duvall's approximately 1,500-word section:

---

[6]     In the 1997 Edition, this section is located within the subsection "Standing", which is within the Chapter entitled "Commencement of Investigation." *See* 1997 Edition, § 3.1[2] (page 54).  In the 2012 Edition, this section is located within the subsection entitled "Institution of Investigation" within the Chapter entitled "Commencement of Investigation." *See* 2012 Edition, § 3:17 (page 92).

Lack of an indispensable party may also jeopardize standing to sue.  ~~As discussed in chapter 3.3[1][B], infra, w~~Where the protection of intellectual property rights is sought, a complaint under section 337 must show that the complaining party is the owner or exclusive licensee of the patent or other intellectual property allegedly being infringed by imported products.  Thus, the owner or the exclusive licensee of the proprietary right at issue has standing to file a complaint, but a non-exclusive licensee alone has insufficient standing unless the property owner is joined as a co-complainant.[1]  However, a complainant is not required to include as co-complainants every firm, or even just the firms known to it, involved in the lawful production of products incorporating the patent, trademark or copyright at issue.

In *Devices With Secure Communication Capabilities*,[2] the Commission did not review (1) the ALJ's grant of a motion to terminate based on lack of standing because complainant did not possess all substantial rights in the patent at issue, and (2) the ALJ's denial of complainant's renewed motion to add a party as an additional complainant to cure the standing issue.  Similarly, in *Electronic Devices With Communication Capabilities*,[3] the Commission did not review the ALJ's grant of a motion for partial termination as to five asserted patents because complainant lacked standing because its ownership rights in those patents was limited by a Purchase Agreement entered into at the time it acquired the patents.  In petitioning for review of the ALJ's ruling, the complainant asked for permission to join one or more unspecified additional parties as complainants to cure the standing issue, but the Commission denied that request because there was no pending motion seeking such relief.  In contrast, in *Electronic Devices With Image Processing Systems*,[4] the Commission denied a motion to terminate the investigation – filed after the Initial Determination on violation was issued – based on the argument that complainant did not own the patents at issue because respondent had not met its burden of showing that complainant's title was defective because, *inter alia*, movant had not submitted any testimony supporting its theory and did not address two documents that undercut its position, while complainant had established a "clear claim of patent ownership."

---

[1]   Budoff, "A Practitioner's Guide to Section 337 Litigation Before the ITC," 17 Law & Pol'y Int'l Bus. 519, 527 (1985) (citing 19 C.F.R. § 210.20(a)(7)) (Interim Rule).

[2]   Inv. No. 337-TA-818, Comm. Notice (August 20, 2012).

[3]   Inv. No. 337-TA-808, Comm. Notice (July 10, 2012).

[4]   ITC Inv. No. 337-TA-724, Comm. Op. at 67, 70 (December 21, 2011).

In *Indomethacin*,[5] the ITC initially found that complainant Merck had no standing to bring an action under section 337 because it had only a non-exclusive license to the ~~suit~~ process patent *at issue*, which Sumitomo owned.  Thereafter, on December 27, 1983, Sumitomo assigned the patent to Merck, but did not assign to Merck any rights relating to infringement before December 27, 1983, thereby limiting Merck's right to sue to acts of infringement occurring after the date of assignment.  This deficiency was subsequently corrected and the presiding judge found that "[N]ow that Merck has acquired all rights in the patent relating to infringement . . . Merck alone has standing to sue based on alleged unfair acts occurring before [or after] that date."[6]

In *One Piece Cold Forged Bicycle Cranks*,[7] the presiding judge rejected an argument that a patent assignment from a foreign parent corporation to a U.S. subsidiary was a sham necessitating the joinder of, inter alia, the foreign parent, on the grounds that the patent assignment was duly recorded, that respondents had not shown it was a sham, and that respondents had not pursued available means of discovery.

In *Apparatus for Disintegration of Urinary Calculi*,[8] the ITC affirmed the judge's refusal to join a subsidiary of complainant on the ground that "the subsidiary had already been specifically named as part of the domestic industry and therefore complainant would have little or no basis to use its separate corporate identity as a basis for avoiding discovery.  However, the ITC reversed the presiding judge's granting of respondents' motion to join two other companies as complainants.  The ITC found that even though the Commission had authority under Interim Rule 210.26 (now Rule 210.19) to join any interested party for good cause, respondents' need for protection against possible multiple litigation by parties interested in the suit patent did not constitute good cause in the circumstances presented.  The ITC explained that one of the proposed complainants could not bring a new section 337 action because it had ceded its exclusive rights to another company; and that the other proposed complainant, a supplier of a component part of the patented apparatus, could not bring another section 337 complaint because the domestic industry was sufficiently represented in this investigation.  The fact that joining this proposed complainant would facilitate discovery was not of itself good cause for the addition of this company as a party to the investigation.

---

[5]   ITC Inv. No. 337-TA-183 ~~(1984)..~~
[6]   Indomethacin, ITC Inv. No. 337-TA-183, Order 39.
[7]   ITC Inv. No. 337-TA-227, 50 Fed. Reg. 33,861 (1985).
[8]   ITC Inv. No. 337-TA-221 ~~(1985)..~~

In *Catalyst Components and Catalysts for the Polymerization of Olefins*,[9] the ITC adopted the administrative law judge's initial determination terminating the investigation for lack of an indispensable party.  The ITC affirmed the ALJ's conclusion that complainant Himont, which had been granted a field of use license by its parent, Montedison, was merely a non-exclusive licensee, and thus not entitled to bring an infringement action without joining Montedison.  In the Commission's view, because Montedison did not convey to Himont exclusive rights in the whole patent, Himont, under federal court precedent, did not have standing to independently maintain an action for infringement of the patents at issue:

> A field of use license, even if the license is exclusive in the designated field of use, does not convey exclusive rights in the whole patent, but only in that part of the patent designated in the transfer.[10]  Consequently, a field of use license is not tantamount to an exclusive license, and the filed of use licensee may not maintain an action without joinder of patent owner.[11]

The Commission also affirmed the ALJ's rejection of complainant Himont's argument that a different standing requirement should apply under section 337 than applies in federal district court patent infringement cases:

> Complainants have not advanced any argument that would warrant departing from such precedent.  Several rationales have been articulated for requiring a patent owner to participate in an action commenced by a licensee.  First, the requirement is designed to prevent repetitive suits concerning the patent from being brought against the same defendant by a series of nonexclusive licensees under the patent.[12]  Second, where the license granted involves only a part of the patent, "the interest of the licensee in defending the validity of that part of the patent may not be

---

[9]   ITC Inv. No. 337-TA-307 (1990).

[10]   Pope Mfg. Co. v. Gormully & Jeffreyery Mfg. Co., 144 U.S. 248, 12 S. Ct. 641, 36 L. Ed. 423 (1892).

[11]   Agrashell, Inc. v. Hammons Products Co., 352 F.2d 443, 446-47, 147 U.S.P.Q. 347 (8th Cir. 1965); Channel Master Corp. v. JFD Electronics Corp., 260 F. Supp. 568, 571-72, 151 U.S.P.Q. 498, 10 Fed. R. Serv. 2d 490 (E.D.N.Y. 1966).

[12]   See Pope Manufacturing, 144 U.S. at 250-51.

identical with the interest of the licensor in defending the whole."[13] Consequently, the licensee will not necessarily mount the fullest possible defense of the patent's validity and enforceability.

Both of these policies apply to section 337 investigations. Requiring the patent owner to participate in a case based upon a complaint filed by a licensee could preclude a subsequent investigation being brought by the patent owner concerning the same imports and respondents. In addition, requiring the participation of the patent owner will ensure that a party with a stake in the entire patent, rather than only a portion of the patent, participates in the investigation.

Moreover, because a nonexclusive licensee has no right to prevent others from practicing the patent (only the right not to itself practicehave the patent asserted against itself), the remedies available under section 337, *i.e.*, exclusion or cease and desist orders, are broader than any interest the licensee has under the patent. Section 337 should not be available to prevent conduct that a nonexclusive licensee has no contractual right to prevent.[14]

In *Concealed Cabinet Hinges*,[15] respondent's motion to amend the notice of investigation to add Julius Blum GmbH as a party complainant was denied, despite respondent's argument that its close relationship with complainant Blum GmbH made it an indispensable party. In the absence of an ITC rule providing for addition of a complainant, respondent cited Fed. R. Civ. P. 19, which provides for joinder of an involuntary plaintiff if, in such person's absence, complete relief cannot be accorded. In denying the motion, Judge Luckern ruled that (1) respondent had not provided an adequate explanation for its delay in making this motion; (2) respondent's correct remedy was to file a motion to compel the present complainant to provide the information in the proposed complainant's possession; (3) the Commission had already ruled that the present complainant, the owner of the patents in suit, was the sole proper complainant; and (4) the parties would be unable to obtain adequate discovery of Julius Blum GmbH if it was added as a complainant.

---

[13] Channel Master, 260 F. Supp. at 572.
[14] Catalyst Components, ITC Inv. No. 337-TA-307 at 11 to 13.
[15] ITC Inv. No. 337-TA-289, Order 30 (April 27, 1989).

In *Rotary Printing Apparatus* ~~Using Heated Ink Composition, Components Thereof, and Systems Containing Said Apparatus and Components~~,[16] the Commission found that respondent Imaje (of France) was not a proper party to the investigation because, although it owned almost a 100% interest in respondent Dato Pack Europa (of Spain) which made and exported the allegedly infringing devices at issue, there was insufficient evidence showing that Imaje was the "alter ego" of Dato Pack Europa.

In *Single In-Line Memory Modules* ~~& Products Containing Same~~,[17] Judge Saxon denied respondents' motion to terminate the investigation partially for complainant's failure to join an indispensable party (Micron). ~~—~~Tracking the requirements of Fed. R. Civ. P. 19, the Judge stated that Micron was not an indispensable party for a number of reasons~~:~~; (1) Micron did not want to become a party; (2) it was fair to the other parties to allow complainant to try to prove a domestic industry existed based on Micron's manufacturing activities without making Micron a party; (3) the Commission could issue complete relief without Micron; (4) there was no indication that Micron would have a separate section 337 claim since Micron was not the patent owner nor an exclusive licensee; and (5) Micron had voluntarily submitted to discovery.

---

[16]   ITC Inv. No. 337-TA-320 (1992).

[17]   ITC Inv. No. 337-TA-336, Order 8 (March 19, 1992).

95.    Notwithstanding that, with the exception of the new paragraph 2, Defendants largely left Judge Duvall's approximately 1,500-word "Indispensable Party / Proper Party" section untouched, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Indispensable Party / Proper Party" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

96.    The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Indispensable Party / Proper Party" section in the 2012 Edition, § 3:17, is wholly without merit.

97.     As the above redline demonstrates, Judge Duvall is plainly an author of the "Indispensable Party / Proper Party" section in the 2012 Edition as it is substantially similar, and wholly identical in large part, to this same section in the 1997 Edition.

98.     **"Evidence."**   Both the 1997 Edition and the 2012 Edition contain a section entitled "Evidence."[7]   The following redline comparison demonstrates that Defendants' only contribution to this section is the addition of citation to an ITC order issued after Judge Duvall's death (a citation used to support a point made by Judge Duvall) and that, with the exception of this footnote, Defendants made no changes whatsoever to Judge Duvall's 1999 section:

---

Only factual material and expert opinion shall be received into evidence, with legal argument presented in the briefs.  Subject to objection, all evidence, including testimony of fact and/or expert witnesses, shall be submitted as written exhibits, with copies served on opposing parties on or before the date to be ordered in the prehearing schedule.  Physical samples, demonstrative displays, or the testimony of hostile or potentially hostile witnesses are excepted, but must be identified in the prehearing statement.  Witnesses whose direct testimony is in exhibit form shall be available for cross-examination unless sponsorship is waived.[1]  Witness statements must be of reasonable length and reflect testimony of the witness, and if found otherwise by the ALJ may be stricken from the record.  Expert witness statements should be prefaced with a statement of qualifications establishing the witness as an expert.

---

[1]     ITC Inv. No. 337-TA-439, Order 53 (May 14, 2001).

---

[7]     In the 1997 Edition, this section is located within the subsection entitled "Hearing Ground Rules," which is within the subsection entitled "Initial Prehearing Conference," within the subsection entitled "Prehearing Conferences," within the Chapter entitled "Prehearing Conference, Discovery and Settlement."  *See* 1997 Edition, § 4.1[1][H][iv] (page 220).   In the 2012 Edition, this section is also located within the subsection "Ground Rules", within the subsection "Initial Proceedings," within the Chapter entitled "Prehearing Proceedings.  *See* 2012 Edition, § 4:9 (page 196).

99.    Notwithstanding that the text within the section entitled "Evidence" in the 2012 Edition is <u>identical</u> to that same section in Judge Duvall's 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Evidence" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

100.    The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Evidence" section in the 2012 Edition, § 4:9, is wholly without merit.

101.    For all intents and purposes, Judge Duvall is the sole author of this section given that Defendants' only contribution to this section is the addition of a footnoted citation to an ITC order that had not issued at the time Judge Duvall died.

102.    At a minimum, Judge Duvall is an author of the "Evidence" section in the 2012 Edition and it is substantially similar to this section in the 1997 Edition.

103.    **"Trade Remedy Assistance."**   Both the 1997 Edition and the 2012 Edition contain a section entitled "Trade Remedy Assistance."[8] As the following redline comparison demonstrates, Defendants in the 2012 Edition merely changed information pertaining to addresses or the location of information online (changes necessitated by the passage of time), and left the rest substantially unchanged:

---

[8]    In the 1997 Edition, this section is located within the chapter entitled "Distinguishing Characteristics."  *See* 1997 Edition, § 2:3 (page 30).  In the 2012 Edition, this section is also located within the chapter entitled "Distinguishing Characteristics."  *See* 2012 Edition, § 2:3 (page 20).

A unique aspect of section 337 investigations is the availability of the Trade Remedy Assistance Office of the Commission.  Section 339 of the Tariff Act of 1930, as amended,[1] established this office to provide: (a) general information to the public concerning remedies and benefits available under certain trade laws and the procedures followed in investigations under those trade laws; and (b) technical assistance to eligible small businesses seeking remedies and benefits under the trade remedy laws administered by the Commission and other agencies.[2]

According to the ITC Rules, a Commission-determined eligible small business may receive technical assistance, including limited legal advice, to determine the appropriateness of pursuing particular trade remedies and to prepare petitions and complaints under trade remedy laws, including section 337.  Such assistance is available only to those seeking benefits under certain trade laws (i.e., only to potential complainants), and is available up through the completion of an administrative review or appeal to the appropriate administering agency.[3]  Prior to the 1988 Omnibus Trade Act, the functions of the Trade Remedy Assistance Office were, in practice, handled by the OUII.  ~~Now~~At that time, however, a separate Office ~~has been~~was established.  This Office renders its assistance to small businesses as defined by the Small Business Administration.[4]  However, such technical assistance does not include legal representation of an eligible small business or advocacy on its behalf and receipt of technical assistance does not ensure that the recipient will prevail in any trade remedy proceeding.[5]

In order to apply for assistance, an applicant must certify to the Commission that it meets the appropriate size standards and provide this certification to the Trade Remedy Assistance Office~~, U.S. International Trade Commission, 500 E Street, S.W., Washington, D.C. 20436 (tel.: (202) 205-2200).  For more details~~.  Details concerning the technical assistance available from the Office and a form for application for such assistance~~, see Appendix V, infra.~~ can be found on the ITC's web site: http://www.usitc.gov/press_room/trao/trao_program_info.htm.

*[Not included here is a paragraph that Judge Duvall included, and Defendants deleted, referring readers seeking legal advice to the ITC Trial Lawyers Association]*

---

[1]    19 U.S.C.A. § 1339, Pub. L. No. 98-573, 98 Stat. 2989 (1984); Pub. L. No. 99-514, 100 Stat. 2924 (1986~~)),~~, Pub. L. No. 100-418, 102 Stat. 110 (1988).

[2]    19 C.F.R. § 213.1.

[3]    19 C.F.R. § 213.2(d).

[4]    See 13 C.F.R. § 121.

[5]    19 C.F.R. § 213.2.

104.     Notwithstanding that essentially the only differences between the 2012 Edition's "Trade Remedy Assistance" section and Judge Duvall's "Trade Remedy Assistance" section in the 1997 Edition pertain to street addresses and the websites containing information, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Trade Remedy Assistance" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

105.     The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Trade Remedy Assistance" section in the 2012 Edition, § 2:3, is wholly without merit.

106.     As the above redline demonstrates, Judge Duvall is plainly an author of the "Trade Remedy Assistance" section in the 2012 Edition as it is nearly identical to this same section in the 1997 Edition.

107.     **"Violations of Protective Order."**  Both the 1997 Edition and the 2012 Edition contain a section entitled "Violations of Protective Order."[9]  As the following two-page redline comparison demonstrates, Defendants made a few small changes to this section in the 2012 Edition but largely left Judge Duvall's text from the 1997 Edition intact:

---

[9]     In the 1997 Edition, this section is located within the section entitled "Protective Orders / Confidential Business Information" within the chapter entitled "Commencement of Investigation."  *See* 1997 Edition, § 3.8[3] (page 168).  In the 2012 Edition, this section is also located within the section entitled "Protective Orders / Confidential Business Information" within the chapter entitled "Commencement of Investigation."  *See* 2012 Edition, § 3:36 (page 135).

Rule 210.34(b) provides that if confidential business information submitted in accordance with the terms of a protective order is disclosed to any person other than in a manner authorized by the protective order, the party responsible for the disclosure must (1) immediately bring all pertinent facts relating to such disclosure to the attention of the submitter of the information and the administrative law judge or the Commission, and (2) without prejudice to other rights and remedies of the submitter of the information, make every effort to prevent further disclosure of such information by the party or the recipient of such information.

Under Rule 210.34(c), any individual who has agreed to be bound by terms of a protective order issued pursuant to Rule 210.34(a), and who is determined by the Commission or the administrative law judge to have violated the terms of the protective order may be subject to one or more of the following penalties:

(1)  an official reprimand by the Commission;

(2)  disqualification from or limitation of further participation in a pending investigation;

(3)  temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to Rule 201.15(a);

(4)  referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice; and

(5)  sanctions as enumerated in Rule 210.33.(b), or such other action as may be appropriate.

Such sanctions may be imposed, upon the filing of a motion by a party or on the administrative law judge's own motion, in the form of a recommended determination if sanctions are of the type set forth in (c)(1) through (4).[1]  Unless the Commission issues a public sanction, the identity of the individual against whom allegations are made must be treated by the parties and the Commission as CBI.

_____

[1]      Under Rule 210.34.(c)(5), an ALJ's ruling on a motion for sanctions shall be in the form of an order, instead of an ID.  Furthermore, under Rule 210.34(d), every person subject to a protective order is obligated by this rule to report to the Commission immediately upon learning that CBI disclosed to him pursuant to the protective order is the subject of a request or order for disclosure in a nonCommission proceeding in the form of a subpoena, court or administrative order (other than an order of a court reviewing a Commission decision), discovery request, or agreement requiring disclosure of that information to persons who may not be entitled to itsuch information under the protective order or under Rule 210.5(b).

In 337 cases, the ALJ issues the APO's when the investigation is before the Commission, not the Secretary. But the Secretary initiates an investigation of an alleged APO breach by issuing a letter of inquiry to the alleged breacher to solicit his views on the allegation. If the Commission determines that a breach has occurred, the Commission issues a second letter asking for mitigating circumstances and possible sanctions. The Commission then decides the appropriate response under the circumstances. When the investigation is still before the ALJ, he presides over any inquiry into breaches of the APO.

108. Notwithstanding that the 2012 Edition's "Violations of Protective Order" section is substantially similar to Judge Duvall's "Violations of Protective Order" section in the 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Violations of Protective Order" section. *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

109. The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Violations of Protective Order" section in the 2012 Edition, § 3:36, is wholly without merit.

110. As the above redline demonstrates, Judge Duvall is plainly an author of the "Violations of Protective Order" section in the 2012 Edition as it is substantially similar to this same section in the 1997 Edition.

111. **"Purpose and Applicability."** Both the 1997 Edition and the 2012 Edition contain a section entitled "Purpose and Applicability."[10] As the following redline comparison

---

[10] In the 1997 Edition, this section is located within the chapter entitled "Duty of Candor / Abuse of Process" within the Chapter entitled "Commencement of Investigation." *See* 1997 Edition, § 3.10[1] (page 183-184). In the 2012 Edition, this section is also located within the section "Duty of Candor / Abuse of Process" within the chapter entitled "Commencement of Investigation." *See* 2012 Edition, § 3:44 (page 156-57).

demonstrates, this section in the 2012 Edition contains a substantial portions of text directly from

Judge Duvall's section in the 1997 Edition:

> As noted above, Rule 210.4, in effect, defines the duty of candor owed by complainants during the pre-institution phase of section 337 investigations. It makes clear that complainants cannot misrepresent and/or omit material facts in pre-institution submissions to, as well as the Commission and that violations of this duty may result in sanctions. of candor owed by all parties during an investigation itself. The rule appliesis particularly toimportant in the context of pre-institution representations of complainants because these are relied upon by the Commission (and, to a certain extent, must be taken at face value) when making the decision whether to institute an investigation; this decision may entail costly and immediate consequences, and is in the context of an essentially *ex parte* proceeding which, due to the limited time frame for making institution decisions (30 days), provides only a limited opportunity for scrutiny of complainant's representations by the Commission and persons with interests adverse to those of complainant. [1] By contrast, postinstitution submissions by all parties are subjected to greater adversarial scrutiny and, as a result, the Commission often receives additional information to help in evaluating and understanding the submissions of the parties.
>
> ---
>
> [1]   Rule 210.4 applies to "all proposed respondents" listed in the complaint.  Thus, the signature and certification requirements apply to all written submissions filed by the proposed parties as well as the parties.

112.   Notwithstanding that, with the exception of the above-demonstrated minor edits, the section entitled "Purpose and Applicability" in the 2012 Edition is substantially similar to Judge Duvall's "Purpose and Applicability" in the 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Purpose and Applicability" section.  *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

113.   The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Purpose and Applicability" section in the 2012 Edition, § 3:44, is wholly without merit.

114.    As the above redline demonstrates, Judge Duvall is plainly an author of the "Purpose and Applicability" section in the 2012 Edition as it is substantially similar to this same section in the 1997 Edition.

115.    **"Prehearing Statement."**  Both the 1997 Edition and the 2012 Edition contain a section entitled "Prehearing Statement."[11]  While Defendants added a paragraph at the end of the "Prehearing Statement" section in the 2012 Edition, the entire first part of this section is taken directly from Judge Duvall's "Prehearing Proceedings" section in the 1997 Edition, which begins:

> Parties participating in the hearing must file a statement prior to the final prehearing conference containing:
> (a)   names and addresses of all known witnesses, both fact and expert, along with a synopsis of their expected testimony, curriculum vitae and area of expertise;
> (b)   a list of all exhibits to be introduced at the hearing;
> (c)   a list of proposed stipulations;
> (d)   a statement of the issues to be considered at the hearing that sets forth *with particularity* a party's contentions on each of the issues specified in the complaint, including citations to supporting legal authorities.  Any contentions not set forth in detail shall be deemed abandoned, controverted, or withdrawn, except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the prehearing statements;
> (e)   a proposed agenda for the prehearing conference; and
> (f)   an estimated duration for the hearing.

---

[11]   In the 1997 Edition, this section is located within the subsection "Hearing Ground Rules," within the subsection "Initial Prehearing Conference," within the subsection "Prehearing Conferences," within the chapter entitled "Prehearing Conference, Discovery and Settlement."  *See* 1997 Edition, § 4.1[1][H][iii] (page 220).  In the 2012 Edition, this section is located within the subsection entitled "Ground Rules," within the subsection "Initial Proceedings," within the Chapter entitled "Prehearing Proceedings."  *See* 2012 Edition, § 4:8 (page 196).

116.    In fact, Defendants' only change to this selection pertains to the words "with particularity," which Defendants put in italics while Judge Duvall underlined it.

117.    Notwithstanding that Defendants took the above text verbatim from Judge Duvall's "Prehearing Statement" section in his 1997 Edition, Kenyon & Kenyon claims that there is "virtually nothing left of" Judge Duvall's "Prehearing Statement" section. *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

118.    The claim of Kenyon & Kenyon and Defendants Marcia H. Sundeen, John W. Bateman, T. Cy Walker and Aimee N. Soucie that they are the sole authors of the "Prehearing Statement" section in the 2012 Edition, § 4:8, is wholly without merit.

119.    As the above redline demonstrates, Judge Duvall is plainly an author of the "Prehearing Statement" section in the 2012 Edition as it is substantially similar to this same section in the 1997 Edition.

120.    By letter dated March 7, 2013, Plaintiff (through counsel) informed Defendant Kenyon & Kenyon of her intention to commence this lawsuit and invited Kenyon & Kenyon to discuss resolution by settlement.  Kenyon & Kenyon ignored this letter.

## FIRST CAUSE OF ACTION
### (Copyright Infringement)
### (Against All Defendants)

121.   Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

122.   As original author of the Work, including the 1997 Edition, Judge Duvall was the original owner of the copyrights to the Work, including the 1997 Edition.

123.   Judge Duvall assigned legal title to these copyrights to a publisher in exchange for the right (of himself and his heirs) to receive royalties from the copyright's exploitation.

124.   Accordingly, Judge Duvall and his heirs, including Plaintiff, became beneficial owner of the copyright to the Work, including but not limited to the beneficial owner of the 1997 Edition (as well as all other editions of the Work authored by Judge Duvall) under the Copyright Act, 17 U.S.C. § 501(b).

125.   The 2012 Edition contains constituent elements of the 1997 Edition that are original, including but not limited to elements demonstrated in the above comparisons.

126.   The 2012 Edition contains large sections of text that Defendants (or someone working at their direction) actually copied from the 1997 Edition (or from a later edition which, itself, copied from the 1997 Edition at Defendants' direction), including but not limited to the above sample sections.

127.   The 2012 Edition of the Work (of which Defendants claim to be sole authors) is substantially similar to the 1997 Edition of the Work (of which Judge Duvall is indisputably sole author).

128.   The 1997 Edition (as well as all other editions of the Work authored by Judge Duvall) contains copyrightable subject matter under the laws of the United States, and has been registered with the United States Copyright Office.   *See* Exhibit A.

129.    Indeed, the 1997 Edition (as well as all other editions of the Work authored by Judge Duvall) contains work by Judge Duvall that is protectable by copyright in that it consists of Judge Duvall's expression and bears the stamp of his originality.

130.    The 2012 Edition is so similar to the 1997 Edition that an ordinary reasonable person would conclude that Defendants, in the 2012 Edition, unlawfully appropriated Judge Duvall's work by taking material of substance and value.

131.    Defendants engaged in the infringing acts described and demonstrated herein willfully, and with complete awareness that Judge Duvall is the original author of the work of which they now claim to be sole authors.

132.    As a result of Defendants' wrongful conduct, Plaintiff has been injured in an amount to be determined at trial.

133.    Plaintiff has suffered, and continues to suffer, irreparable harm by Defendants' violations of the Copyright for which there is no adequate remedy at law.  Unless restrained by this Court, the violations will continue to cause injury to Judge Duvall's estate and to the public.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Declaration of Authorship)**
**(Against All Defendants)**

134.    Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

135.    This is a cause of action by Plaintiff against Defendants for a declaration that Judge Duvall is an author of the 2012 Edition.

136.    The claims asserted in this cause of action present a justiciable controversy as to the rights and obligations of Plaintiff and Defendants pertaining to (i) beneficial ownership of copyrights (ii) certain contractual agreements regarding royalties.

137.    Plaintiff is entitled to a declaration of rights and obligations under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

### THIRD CAUSE OF ACTION
**(Declaratory Judgment – Illegal Contract)**
**(Against Kenyon & Kenyon)**

138.    Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

139.    Defendant Kenyon & Kenyon has asserted that it "plans to enter into a new contract directly with the publisher, which shall supersede and replace any prior agreements between or among the publisher, the Firm and Judge Duvall, his heirs, successors or assigns."

140.    This is a cause of action by Plaintiff against Kenyon & Kenyon for a declaration that (i) Kenyon & Kenyon has no right to enter into any such contract or, (ii) in the event that it already has entered into any such contract, that any such contract is null and void.

141.    The claims asserted in this cause of action present a justiciable controversy as to the rights and obligations of Plaintiff and Defendants pertaining to certain contractual agreements regarding royalties.

142.    Plaintiff is entitled to a declaration of rights and obligations under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.

### FOURTH CAUSE OF ACTION
**(Breach of Contract)**
**(Against Kenyon & Kenyon)**

143.    Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

144.    Defendant Kenyon & Kenyon has breached the 1997 Agreement, ¶ 6, by failing to share one-third of the royalties derived from sales of the Work with Plaintiff.

145.    Plaintiff has complied with and has performed fully all terms and conditions under the 1997 Agreement.

146.     Plaintiff is entitled to money damages for the amounts past due by reason of the breach.   As a direct and proximate result of Defendants' material breaches of the contract, Plaintiff has suffered, and is entitled to recover, direct, indirect, consequential and incidental damages in an amount to be determined at trial.

147.     Defendant Kenyon & Kenyon's breach was willful.   It has the character of a willful tort, was calculated rather than inadvertent.   It was flagrant and was in disregard of obligations of trust.   Plaintiff is thus also entitled to punitive damages.

**FIFTH CAUSE OF ACTION**
**(Breach of the Implied Duty of Good Faith and Fair Dealing)**
**(Against All Kenyon & Kenyon)**

148.     Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

149.     In the 1997 Agreement, Judge Duvall and Kenyon & Kenyon agreed that "[a]ny royalties from the volume will continue to be paid to Donald K. Duvall or his Estate for the next two (2) years.   Thereafter, one-third (1/3) of all such royalties will be paid to Donald K. Duvall or his Estate so long as his name appears on the volume."   1997 Agreement, ¶ 6.

150.     The obvious purpose of this provision was to ensure that Judge Duvall or his estate would continue to receive royalties derived from sales of editions of the Work for so long as Judge Duvall remains an author of any such editions of the Work.

151.     Kenyon & Kenyon has at all times had knowledge that this was the purpose of this provision, as demonstrated by the basis that Kenyon & Kenyon has recently provided to Plaintiff as purported justification for its conduct, i.e., that "there is virtually nothing left of the original work."   *See* June 15, 2012 letter from Kenyon & Kenyon to Plaintiff's counsel.

152.     Kenyon & Kenyon's assertion that Judge Duvall is no longer an author of the Work because "there is virtually nothing left of the original work, as over the years since Kenyon

& Kenyon took over complete charge of the Book, it has been rewritten any number of times," is false.

153.   Defendants have not "rewritten" Judge Duvall's work.

154.   Vast amounts of the text from the 1997 Edition remain in the 2012 Edition, as the sample comparison sections above indicate.

155.   Kenyon & Kenyon has taken this false position so as to purportedly justify its decision to remove Judge Duvall's name from the cover of the 2012 Edition.  Accordingly to Kenyon & Kenyon, the fact that Judge Duvall's name does not appear on the cover of the 2012 Edition (notwithstanding that he is plainly an author of it) relieves Kenyon & Kenyon of its contractual obligation to pay Judge Duvall's estate "one-third (1/3) of all such royalties" under ¶ 6 of the 1997 Agreement.

156.   By removing Judge Duvall's name from the cover of the 2012 Edition, notwithstanding that he is indisputably an author of it, Kenyon & Kenyon has destroyed the right of Mrs. Duvall and Judge Duvall's Estate to receive the fruits of the 1997 Agreement.

157.   Defendants' conduct has violated its duty of good faith to the agreed common purpose of the 1997 Agreement and is wholly inconsistent with the justified expectations of Plaintiff and Judge Duvall's estate that he or his heirs would continue to receive royalties derived from sales of editions of the Work for so long as Judge Duvall remains an author of any such editions of the Work.

158.   Defendant Kenyon & Kenyon's conduct has been undertaken in bad faith and violates community standards of decency, fairness and reasonableness.

159.   Defendant Kenyon & Kenyon's conduct evades the spirit of the 1997 Agreement by willfully manufacturing a false basis to relieve its performance.

160.     As the result of Defendant Kenyon & Kenyon's wrongful conduct, Plaintiff has been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Civil Conspiracy)**
**(Against All Defendants)**

161.     Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

162.     Upon information and belief, Defendants entered into an unlawful agreement with Thomson Reuters the purpose of which was to eliminate any right of either Mrs. Duvall or Judge Duvall's estate to any portion of royalties derived from sales of the Work.

163.     Evidencing this unlawful agreement, Kenyon & Kenyon and Thomson Reuters have recently both falsely and in bad faith told Plaintiff that she (and Judge Duvall's Estate) is no longer entitled to any royalties under the applicable agreements because, according to them, Judge Duvall is no longer an author of the Work.

164.     In a letter to Plaintiff dated June 15, 2012, Kenyon & Kenyon stated that it is relieved of its obligation to share any royalties with her because, in Kenyon & Kenyon's words, "there is virtually nothing left of the original work, as over the years since Kenyon & Kenyon took over complete charge of the Book, it has been rewritten any number of times."

165.     Then, in a December 18, 2012 letter to Plaintiff, Thomson Reuters stated that Mrs. Duvall is no longer entitled to royalties because:

> [A]fter careful determination as to source of the [W]ork's content, the substantial revision of that content by the current authors, and the many years since Judge Duvall had contributed material to the publication, we were forced to conclude that attributing the work to Judge Duvall no longer provided readers with an accurate statement of authorship.

166.     Kenyon & Kenyon has refused to share royalties as required and/or caused Thomson Reuters not to remit any royalties to Plaintiff as required.

167.     Thomson Reuters has not remitted any royalties to Plaintiff as required.

168.     Both Kenyon & Kenyon and Thomson Reuters have engaged in overt acts in furtherance of their unlawful agreement to wrongfully deprive Plaintiff and Judge Duvall's estate of royalties to which they are entitled.

169.     Upon information and belief, the four individual Defendants have engaged in overt acts in furtherance of this unlawful agreement, including with respect to false representations of authorship.

170.     As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial

## SEVENTH CAUSE OF ACTION
### (Interference with Contract)
### (Against All Defendants)

171.     Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

172.     The 1989 Agreement is a valid agreement between Judge Duvall and his estate and the publisher, Thomson Reuters (the successor to Clark Boardman, Ltd.), pursuant to which Judge Duvall and his estate are entitled to certain royalties.   (Thomson Reuters could not be named as a Defendant in this action due to an arbitration clause in the 1989 Agreement.)

173.     Defendants have at all times had knowledge of the 1989 Agreement.

174.     In the alternative to Plaintiff's allegation that Defendants entered into the unlawful agreement described above, ¶ 162, upon information and belief, Defendants caused Thomson Reuters to breach the 1989 Agreement by falsely representing to Thomson Reuters that Judge Duvall is no longer an author of the 2012 Edition, notwithstanding Defendants' actual knowledge at all times that Judge Duvall is an author of the 2012 Edition.

175.    Thus, Defendants intentionally interfered with the 1989 Agreement causing termination of it or causing Thomson Reuters to fail to perform.

176.    Defendants acted with the motive and purpose to disrupt an ongoing business relationship.

177.    Defendants' motive was improper and unlawful.

178.    As a result of Defendants' wrongful conduct, Plaintiff has been damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Accounting of Royalties Received)**
**(Against Kenyon & Kenyon)**

179.    Plaintiff realleges each of the foregoing allegations as if fully set forth herein.

180.    Plaintiff and Judge Duvall's estate are beneficial owners of the 1997 Edition of the Work (as well as of all other editions of the work containing text of which Judge Duvall is an author).

181.    As beneficial owner, and pursuant to contractual rights to royalties, Plaintiff is entitled to an accounting of Kenyon & Kenyon's royalties from sales of the Work, as well as an amount equal to one-third thereof.

182.    Kenyon & Kenyon is therefore obligated to account to and compensate Plaintiff for the appropriate share of royalties from sales of the Work, including but not limited to the 2012 Edition.

**WHEREFORE,** Plaintiff requests judgment against Defendants:

a.      For damages sustained as a result of Defendants' infringement of Plaintiff's rights as beneficial owner of copyrights, breaches of contract and other violations of Plaintiff's rights in an amount to be determined at trial;

b.      For a declaration pursuant to the Declaratory Judgment Act that Judge Duvall is an author of the 2012 Edition;

c.      For a declaration pursuant to the Declaratory Judgment Act that (i) Kenyon & Kenyon has no right to enter into any new contract directly with the publisher which shall supersede and replace any prior agreements between or among the publisher, Kenyon & Kenyon and Judge Duvall, his heirs, successors or assigns or, (ii) in the event that Kenyon & Kenyon already has entered into any such contract, a declaration that any such contract is null and void;

d.      For a declaration pursuant to the Declaratory Judgment that Defendants' improper claim to sole authorship of the 2012 Edition constitutes infringement of Plaintiff's rights as a beneficial owner of the copyright to the 1997 Edition;

e.      For Defendant Kenyon & Kenyon to account to Plaintiff for revenues and any damages sustained by Plaintiff from the exploitation of work of which Plaintiff is beneficial copyright owner;

f.      For permanent injunctive relief against Defendants and all persons acting in active concert or participation with them prohibiting them from (i) holding themselves out as sole authors of the 2012 Edition or any other volume that contains Judge Duvall's work and (ii) contributing to the reproduction, distribution or public display of the 2012 Edition or any other volume that contains Judge Duvall's work but does not properly indicate his authorship accreditation;

g.    For permanent injunctive relief against Kenyon & Kenyon enjoining it from (i) entering into any new contract directly with the publisher which shall supersede and replace any prior agreements between or among the publisher, Kenyon & Kenyon and Judge Duvall, his heirs, successors or assigns or, (ii) in the event that any such contract already exists, taking any step further to the performance of this contract or otherwise enforcing it;

h.    Awarding Plaintiff punitive damages as a result of Defendants willful and egregious conduct;

i.    Awarding Plaintiff her reasonable attorney's fees and costs, including under the Copyright Act; and

j.    Granting such other and further relief that this Court may deem just and proper.

Dated: New York, New York
       April 17 2013

LAW OFFICE OF SARA KROPF PLLC

By: _____
      Sara Kropf (D.C. Bar 481501)

1001 G St. NW, Suite 800
Washington, D.C.  20001
(202) 627-6900
(202) 347-0316 (fax)
sara@kropf-law.com

*Local Counsel to Plaintiff*

POHL LLP
David M. Pohl
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 202-1614
(646) 924-3100 (fax)
david.pohl@pohllaw.com

*Attorney for Plaintiff*
*Pro Hac Vice Application Pending*